IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | § | |
|---|---|---|
| REBECCA KINERD, AS NEXT FRIEND OF | § | |
| D.N.J., A MINOR, | § | |
| | § | |
| PLAINTIFF | § | CIVIL ACTION NO.6:18-CV-366 |
| | § | |
| V. | § | |
| | § | |
| ROBINSON I.S.D., | § | |
| | § | |
| DEFENDANT. | § | |

# PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Rebecca Kinerd, as next friend of D.N.J., a Minor, files her First Amended Complaint and would show the Court as follows:

## CASE INFORMATION

**1. Jurisdiction and Venue.**

A. <u>Nature of the Action</u>. This suit seeks a declaratory judgment, preliminary injunctive relief and damages, attorney's fees and costs of court for the defendant's violations of 42 U.S.C. § 1983 and related state law claims, through which the defendant deprived and is depriving D.N.J., a Minor of his right to participate in the public education system available to him in his area of residence.

B. <u>Personal Jurisdiction</u>. All individual parties reside in the territorial limits of the Court. Defendant Robinson I.S. D. is a political subdivision within the territorial limits of the

Court.

      C.    <u>Subject Matter Jurisdiction (Federal Question and Pendant State Law)</u>. Plaintiff asserts a federal question through claims under 42 U.S.C. § 1983 and therefore the Court has subject matter jurisdiction over the suit via 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367 Plaintiff asks the Court to exercise "supplemental jurisdiction" over state law claims for violations of the Texas Education Code and for negligence and gross negligence, as the facts and circumstances of the state law claims form part of the same case or controversy as D.N.J., a Minor's claims under 42 U.S.C. § 1983.

      D.    <u>Venue</u>. This Court is an appropriate venue for the action under 28 U.S.C. § 1391 as the acts and omissions complained of took place within the district and division and the defendant resides within the district and division.

**2.    Parties**.

      A.    <u>Plaintiff D.N.J., a Minor</u>. D.N.J., a Minor is an individual minor child, born on ███████████. D.N.J., a Minor's mother, Rebecca Kinerd, brings this suit on his behalf and as his next friend. Ms. Kinerd and D.N.J., a Minor reside together at 230 Kettler Dr., Robinson, TX 76706.

      B.    <u>Defendant Robinson I.S.D</u>. Robinson I.S.D. is a political subdivision of the State of Texas formed to provide a public education to eligible students living within the boundaries of a specified territory centered 10 miles south of Waco, TX. Robinson I.S.D. may be served through the President of its Board of Trustees, Laura Crawford, at 500 W. Lyndale, Robinson, TX 76706 in the event it refuses to waive service.

## FACTS GIVING RISE TO THE CLAIM

3. **Summary**. What follows is a story in the tradition of Franz Kafka or Victor Hugo. The Robinson I.S.D. is for some reason persecuting a young man—plaintiff D.N.J., a Minor -- for two admittedly inappropriate, but flippant statements made 18 months ago. At the time of the statements D.N.J., a Minor was a shy, awkward thirteen year-old dealing with the impending death of his father from terminal cancer. Since that time and continuing until now D.N.J., a Minor's older brother has engaged in his own perilous battle with cancer while D.N.J., a Minor's younger brother struggles with autism and other emotional disorders. In other words, D.N.J., a Minor has more to deal with than any teenager should be asked to.

Because D.N.J., a Minor's comments involved the magic words "school shooter," however, Robinson I.S.D. has decided to bring the hammer down on a powerless, hurting child who needs as much help as he can get. In doing so, Robinson I.S.D. relies on overly technicial interpretations of its own rules and the Texas Education Code, never missing an opportunity to exert maximum punishment.

The irony is that the district's reliance on the Education Code is wholly misplaced, both because the district wrongly interprets the length of time that it can punish a student for one act and because the district explicitly and implicilty misrepresented the punishment being administered. The district is a political subdivion acting under the color of state law; its acts and omissions have denied D.N.J., a Minor his fundamental constitutional right to a public education; and those acts and omissions lack a reasonable basis. Moroevoer, on information and belief, Robinson I.S.D. has punished D.N.J., a Minor much more severely than other students who have committed similar or worse offenses. These circumstances represent the exact type of wrongs 42 U.S.C. § 1983 exists to

remedy; a mindless government entity oppressing the powerless. D.N.J., a Minor seeks justice under that statute and provides the Court the following information.

4. **Student Status**. During the spring semester of the 2016-2017 school year, D.N.J., a Minor was a seventh-grade student at Robinson Middle School, having been enrolled in Robinson I.S.D. schools since 2010, with the exception of the fall semester of the 2016-2017 school year when Ms. Kinerd's employment briefly required that they live outside the district and an even shorter period in elementary school when he disenrolled because of continual bullying.

5. **Initial Diciplinary Action**. On or about April 25, 2017, Robinson I.S.D. employees removed D.N.J., a Minor to "in-school suspension" as a disciplinary measure. The genesis for this removal stemmed from a comment that D.N.J., a Minor made to another student and friend indicating D.N.J., a Minor's belief that a third student "looked like a school shooter" or words to that effect. The district notified Ms. Kinerd of the alleged comment and D.N.J., a Minor's placement into in-school suspension.

6. **The Hearing**. On May 1, 2017, Ms. Kinerd received notice of a disciplinary hearing to be held on May 4, 2017 to consider the incident and what additional discipline, if any, would be appropriate. On May 4, 2017, the hearing went forward. The hearing lasted 15 minutes and was attended by D.N.J., a Minor, Ms. Kinerd, Shelley Chudej, the principal of Robinson Junior High School, and Tim VanCleave, the Assistant Superintendent of Robinson I.S.D. Mr. VanCleave acted as the hearing officer, Ms. Chudej presented the district's evidence and Ms. Kinerd represented D.N.J., a Minor. The district made an audio recording of the hearing.

Mr. VanCleave opened by reciting the rules governing the proceeding and informed D.N.J., a Minor and Ms. Kinerd that the district's code of conduct allowed for expulsion of a student who had

made a terroristic threat. Ms. Chudej then offered the following incidents involving D.N.J., a Minor as evidence in support of the need for discipline:

1. A referral from April 14, 2017 for "inappropriate display of affection" (kissing a girl in the courtyard);

2. A referral on April 20, 2017 for failure to put his phone away, during which he "said something about a school shooter"; specifically, that D.N.J., a Minor had texted a friend that another student "looked like a school shooter."

3 A referral on April 25, 2017, that D.N.J., a Minor had a "spinner" and potentially had a knife. D.N.J., a Minor denied having a knife, the teacher conducted a search and no knife was found. Despite no knife being found, the teacher referred D.N.J., a Minor to another room to "sit out" as a punishment, and noted that D.N.J., a Minor was mad about her decision.

4. A second referral on April 25, 2017 from two students who reported to office personnel that D.N.J., a Minor has threatened to "bring a gun to school to prank students."Oninvestigation of that complaint, D.N.J., a Minor told the teacher he was joking, he did not own a gun and he would not have the nerve to bring a gun to school even if he did own one.

Ms. Chudej offered no commentary on these events.

In response, Ms. Kinerd pointed out that at no time before the hearing had the district informed her about the nerf gun incident; she was not told about the kissing incident and she was not told about the text message at the time it happened. Next, D.N.J., a Minor clarified that his statement about bringing "a gun to school" was actually a question as to whether it would be funny to bring a "nerf gun" to school; that he had been joking; and that he had never held or even touched a gun.

Ms. Kinerd made clear the crucial point by emphasizing that at no time had D.N.J., a Minor indicated a threat or even a desire to bring an actual gun to school or to do physical harm to people or property. Mr. VanCleaf closed the proceeding by asking for details on the described incidents; D.N.J., a Minor's grades and discussing with D.N.J., a Minor how today's climate made comments like those at issue problematic.

**FIRST AMENDED COMPLAINT**                                                   **PAGE 5**

7.  **Result of Hearing-the Expulsion Order**. On May 9, 2017, Mr. VanCleave issued an "Expulsion Order." The Expulsion Order indicated that the district held the hearing to consider whether D.N.J., a Minor had issued a "terroristic threat." The Expulsion Order recited Mr. VanCleave's decision to expel D.N.J., a Minor from Robinson Junior High School for a period of 177 school days and offered a referral for D.N.J., a Minor to the McLennan County Challenge Academy. The Expulsion Order also noted that the number of expulsion days qualified as one school year; noted that a right of appeal existed if written request was made to the District Board of Trustees within seven days of receipt of the Expulsion Order; and provided the phone number for enrollment at the McLennan County Challenge Academy.

8.  **Withdrawl From School**. The severity of the punishment stunned Ms. Kinerd and D.N.J., a Minor. She discussed Mr. VanCleave's decision with him, but was not offered any substantive reason that could possibly support a year out of school for two inappropriate jokes from a seventh grader. Nevertheless, Mr. VanCleave indicated that if D.N.J., a Minor wanted to attend school, the Mclennan County Challenge Academy would be his only option. Ms. Kinerd told Mr. VanCleave that the Challenge Academy placement was unacceptable and that she would be home-schooling D.N.J., a Minor instead. Mr. VanCleaf indicated that home-schooling was Ms. Kinerd's right, but that if she opted to do so, she would need to withdraw D.N.J., a Minor from school. Ms. Kinerd followed Mr. VanCleave's instructions and caused the school office to remove D.N.J., a Minor from the district's rolls.

9.  **Juvenile Justice Law Enforcement Referral**. The district referred D.N.J., a Minor to the juvenile justice department for McLennan County. D.N.J., a Minor met with an investigator who reviewed the "evidence." The investigator quickly and accurately concluded that D.N.J., a

Minor had not commited a crime. The investigator released D.N.J., a Minor from any further reporting or supervision responsibilities with the juveile justice department.

10. **First Attempted Re-Enrollment.** Ms. Kinerd misunderstood the Expulsion Order and believed the district had expelled D.N.J., a Minor for 177 calendar days, rather than 177 school days. Based on that belief, Ms. Kinerd attempted to re-enroll D.N.J., a Minor during the 2017 holiday break. School personnel responded by noting that D.N.J., a Minor had not served his 177 school days worth of expulsion. Ms. Kinerd reviewed the Expulsion Order, saw her mistake and contiuned home-schooling D.N.J., a Minor.

11. **Second Attempted Re-Enrollment**. In August of this year, Ms. Kinerd again attempted re-enroll D.N.J., a Minor, this time as a high school student at Robinson High School. Originally, Ms. Kinerd received notice that the enrollment was succesful. When Ms. Kinerd tried to complete registration to obtain D.N.J., a Minor's class schedule, school personnel informed her that she had mistakenly noted D.N.J., a Minor was a "returning" student rather than a "new" student. After several unsuccessful attempts to enroll D.N.J., a Minor as a new student, the Robinson High School principal contacted Ms. Kinerd and said the district was denying D.N.J., a Minor admission because, while D.N.J., a Minor had completed his expulsion he had not completed a 177-day assignment to a "Disciplinary Alternative Education Program" ( or "DAEP"). Ms. Kinerd pleaded with the principal to allow enrollment, noting that D.N.J., a Minor's father had recently died of cancer; D.N.J., a Minor's older brother was undergoing his own tortorious battle with a rare and aggressive cancer; D.N.J., a Minor's younger brother is autistic and emotionally disturbed; that D.N.J., a Minor had been removed from any normal social setting for over a year and that D.N.J., a Minor desperately needed a place to be a kid.

Aside from these catastrophic circumstances, Ms. Kinerd pointed out the obvious. The Expulsion Order says nothing about the necessity of enrollment in DAEP and that on three ocassions Ms. Kinerd had discussed with school personnel, including Mr. VanCleaf, her plan to home school D.N.J., a Minor. Not once did anyone say that the home schoool plan would not meet the requirments of the Expulsion Order.

The principal promised to find out if anything could be done under those circumstances. Ultimately, however, the principal responded that D.N.J., a Minor needed to be further punished for two careless statements made 15 months ago, although the principal was at least politically correct enough to wrap the result in useless euphemisms.

**12. McLennan County Challenge Academy**. It is clear that the Expulsion Order does not require D.N.J., a Minor's attendance at the McLennan County Challenge Academy. In the unlikely event that such attendance is required, however, the placement is not appropriate. The McLennan County Challenge Academy does not provide students an adequate education and is unsafe to the point that students assigned there must balance their physical well-being against the meagar instruction they do receive.

**13. Unequal Treatment**. Based on published news reports and accnts from other parents it appears that the punishment imposed on D.N.J., a Minor for a terroristic threat far exceeds the punishment given other students.

**14. Retention of Counsel and Formal Demand**. With no option left Ms. Kinerd retained the undersigned who sent formal demand to the district to either re-enroll D.N.J., a Minor or allow an out-of-time appeal of the Expulsion Order. Through its counsel, the district rejected the demand.

## CAUSES OF ACTION

15. **42 U.S.C. § 1983.**

   A. **State Action.** Robinson I.S.D. is a political subdivision of the state of Texas and Mr. VanCleave is an employee of that political subdivision. Thus, the district, for itself and through Mr. VanCleave, is a state actor for purposes of 42 U.S.C. § 1983.

   B. **Deprivation of Rights**. The statute provides a private cause of action against any state actor who deprives another person of "any rights, privileges, or immunities secured by the Constitution and laws..." Included within this protection are the rights to substantive and procedural due process under the law and to the equal protection of the law. Through the acts and omissions described above, the Defendant deprived D.N.J., a Minor of his procedural and substantive due process rights and his equal protection rights.

   C. **Specific Application of 42 U.S.C. § 1983**. D.N.J., a Minor's right to an adequate public education the same as given to his peers is fundamental. That right can only be curtailed based on a substantial state interest demonstrated through proceedings designed to protect D.N.J., a Minor's procedural and substantive due process rights. The Texas Education Code and the Robinson Student Conduct Code provide the framework to apply these bedrock constitutional principles in school discipline situations.

   These two codes make several points clear:

   i. Expulsion and DAEP assignment are separate concepts.

   ii. DAEPs exist to provide an alternative education setting for students temporarily excluded from their "regular educational setting," including expelled students. *See* Report No. 17, August 2007 Division of Accountability Research, Department of Assessment, Accountability and Data Quality, Texas Education Agency, pp. 1-4 (detailing historical development of DAEPs).

iii. DAEP assignment is ordinarily mandatory for a terroristic threat; expulsion is optional. *Compare* Tex. Educ. Code §37.006(a)(1)(DAEP assignment mandatory) and Tex. Educ. Code §37.007(b)(1)(expulsion discretionary).

iv. But DAEP assignment is not mandatory if a student is expelled for the same conduct that otherwise generates a DAEP assignment. Tex. Educ. Code §37.006(m).

v. A district may require both expulsion and DAEP placement for certain student conduct, but that conduct does not include terroristic threat. Tex. Educ. Code §37.0081.

vi. Students who withdraw to avoid disciplinary penalties and subsequently re-enroll can have the prior penalty enforced against them only if the re-enrollment happens in the same or subsequent school year. Tex. Educ. Code §37.009(i).

vii. Proof of terroristic threat requires proof of the elements of that crime as defined by Tex. Penal Code §22.07. Tex. Educ. Code §37.006(a)(1) and Tex. Educ. Code §37.007(b)(1)(both referencing "terroristic threat" as defined by the Penal Code).

viii. The Penal Code and the Texas Education Code require evidence of the speaker's intent to do violence when considering an alleged terroristic threat by a student. Tex. Penal Code §22.07 (defining a terroristic threat as a "threat to commit any offense involving violence to any person or property with an intent to…") and Tex. Educ. Code §37.001(4)(b)("intent or lack of intent at the time the student engaged in the conduct" must be a factor in any serious discipline decision).

ix. Any DAEP placement that extends beyond the school year in which the penalty is assessed must include a finding that the student's presence in the regular classroom program or at the student's regular campus presents a danger of physical harm to the student or to another individual or the student has engaged in in serious or persistent misbehavior that violates the district's student code of conduct. Tex. Educ. Code §37.009(c).

Applying these code provisions results in several inevitable conclusions. First, when a school district deals with expulsion and/or DAEP assignment, it potentially has three options. The district

can expel the student, in which circumstance the student and his family have the option of enrolling in the DAEP program during the time of the expulsion. The district can mandate attendance at DAEP, in which circumstance the student and family have the option of complying with the assignment or withdrawing. A withdrawal, however, cannot avoid the DAEP assignment for the year of the infraction or the next year. Finally, the district can expel the student and require DAEP completion before reenrollment in a regular program, but only if the infraction falls within specifically defined categories.

The Expulsion Order plainly mandates expulsion and gives D.N.J., a Minor the option of DAEP enrollment during the time of the expulsion. Most notably, the title of the order is "Expulsion Order" rather than "DAEP Assignment Order" or "Expulsion and DAEP Assignment Order." Indeed, DAEP does not appear anywhere in the Expulsion Order. Even assuming that the reader understands that the McLennan County Challenge Academy is a DAEP program, the letter is a *referral* to the DAEP program as opposed to an *assignment* to a DAEP program. The conduct of this district's employees, who failed to warn Ms. Kinerd that the district viewed the Expulsion Order as requiring DAEP completion when those employees knew D.N.J., a Minor was not enrolled in DAEP, confirmed and ratified that the letter meant expulsion with an option to attend a DAEP. Finally, an order that requires both DAEP and Expulsion can only be valid for the defined felony offenses described in Tex. Educ. Code §37.0081, which do not include terroristic threats. Reading the Expulsion Order in the manner this district suggests means the Expulsion Order by definition violates the Education Code. Because D.N.J., a Minor has complied with the plain meaning of the Expulsion Order by serving a 177-day expulsion, the district's refusal to re-enroll him lacks a statutory basis, fails to serve a state interest, deprives D.N.J., a Minor of his right to an education the

same as his peers and violates 42 US.C. §1983.

Second, if by some leap of logic, one assumes that the Expulsion Order appropriately requires both Expulsion and DAEP completion, that order only had force for the school year in which it was entered (2016-2017) and the subsequent school year (2017-2018). It is common sense that students who sit out over a year "have served their time" and are entitled to a fresh start. The Education Code reflects that common-sense idea and allows for D.N.J., a Minor's re-enrollment under the circumstances no matter the meaning or intent of the Expulsion Order. Because the Expulsion Order is no longer enforceable as to D.N.J., a Minor, the district's refusal to re-enroll him lacks a statutory basis, fails to serve a state interest, deprives D.N.J., a Minor of his right to an education the same as his peers and violates 42 US.C. §1983.

Third, it is painfully obvious that the Expulsion Order rests on a fiction. There is no evidence that D.N.J., a Minor committed a terroristic threat. Likewise, there is zero evidence that D.N.J., a Minor presented a risk of physical harm to himself or others or engaged in persistent or serious misconduct. D.N.J., a Minor never threatened violence against anyone; at most he talked about bringing nerf gun to school. He has no access to guns and in fact has never touched one. D.N.J., a Minor's comments simply do not meet the statutory elements required for this level of punishment.

D.N.J., a Minor presumes that had he appealed the matter to the school board or to a Texas District Court saner heads would have prevailed. He would have made that appeal had he known that DAEP completion was a pre-requisite to re-enrollment in the district; because the Expulsion Order does not reflect the district's actual intent, D.N.J., a Minor was deprived of the opportunity to appeal. Further, the Expulsion Order's seven-day time limit for appeal is both an incorrect statement of the time allowed (the district's current code of conduct provides a 10-day appeal period) and arbitrary

and capricious. Given all of the above the district's refusal to hear an "out-of-time appeal" both prevents any further appeal to a Texas District Court for a *de novo* trial and fails to serve a state interest, deprives D.N.J., a Minor of his right to an education the same as his peers and violates 42 US.C. §1983. Finally, the district's much harsher treatment of D.N.J., a Minor as compared to other students charged with making a terroristic threat is a *prima facie* case of unequal treatment under the law.

In summary, the district violated 42 U.S.C. §1983 in at least the following ways:

- Failure to provide procedural due process by enforcing an order in a manner inconsistent with the terms of that order

- Failure to provide procedural due process by misrepresenting the impact of a failure to appeal the Expulsion Order

- Failure to provide substantive due process by removing D.N.J., a Minor's ability to attend a public school that provides the minimally necessary instruction and safety requisite for obtaining an education

- Failure to provide substantive due process by requiring DAEP attendance in a manner inconsistent with the Texas Education Code and the Robinson I.S.D. Code of Conduct

- Failure to provide equal protection of the law by disciplining D.N.J., a Minor much more harshly than other students who actually committed the conduct attributed to D.N.J., a Minor

D. **Foreseeability and Causation**. The acts and omissions described above were the producing and proximate cause of the injuries D.N.J., a Minor suffered and were all reasonably foreseeable to the Defendant. Defendant willfully disregarded the likely consequences of its acts and omissions.

16. **Declaratory Judgment Claim**. Pursuant to 28 U.S.C. § 2201, D.N.J., a Minor

requests that the Court declare that he has complied with all provisions of the Expulsion Order necessary to gain his reenrollment to the district under the Texas Education Code and the district's Student Code of Conduct.

17. **Negligence and Gross Negligence**. The defendant owed a duty of care to D.N.J., a Minor with which the acts and omissions described above failed to comply. This failure was the foreseeable proximate cause of D.N.J., a Minor's injuries. The Defendant was in fact grossly negligent given its willful and wanton disregard for D.N.J., a Minor's well-being.

18. **Preliminary or Accelerated Injunctive Relief and/or Accelerated Declaratory Relief**. Pursuant to Western District of Texas Local Rule 65, D.N.J., a Minor will submit an application for preliminary injunctive relief or accelerated scheduling based on the irreparable injury his inability to extend school causes. For completeness, this Complaint asks for the earliest possible and accelerated consideration of that application and D.N.J., a Minor's claim for declaratory relief.

19. **Damages, Fees and Costs**. D.N.J., a Minor seeks monetary compensation for the pain and suffering caused by Defendant in an amount to be determined by the jury, punitive damages in an amount to be determined by the jury, damages under 42 U.S.C. § 1983 for the loss of his ability to attend school, attorney's fees (under 42 U.S.C. § 1983 and 28 U.S.C. § 2201), costs of court and pre-judgment and post judgment interest.

## SUBMISSION

20. **Jury Demand.** Plaintiff demands a jury to resolve any triable issues of fact but does not presently believe any such issues exist.

21. **Claim for Relief.** Plaintiff requests that the Court:

    A) issue summons;

B) hold an immediate injunction hearing or otherwise consider Plaintiff's Application for Preliminary Injunctive Relief and Accelerated Consideration;

C) after such hearing, order that Defendant immediately enroll Plaintiff in Robinson High School during the pendency of the suit;

D) after final trial and hearing, award plaintiff the declaratory judgment, damages, attorneys' fees, costs of court and prejudgment and post judgment interest on those sums at the highest rate allowable at law; and

E) enter any further orders to which the plaintiff may be entitled.

Respectfully submitted,

/s/ *Stephen D. Howen*
Stephen D. Howen
State Bar No. 10117800
Law Office of Steve Howen
7111 Bosque Blvd.
Suite 305
Waco, TX 76710
Telephone: (254) 826-6526
Facsimile: (254) 822-4956
steve@stevehowenlegal.com